UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

-------------------------------------------------------------X

DISCOVERIT SOLUTIONS, INC,

*Plaintiff,*

-against-

HEWLETT-PACKARD COMPANY,

*Defendant.*

-------------------------------------------------------------X

Index No.: _____

1:14CV336  TSE/JFA

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff DiscoverIT Solutions, Inc. ("DiscoverIT"), by its undersigned counsel at Legal Meets Practical, LLC, as and for its Complaint against defendant Hewlett-Packard Company ("HP" or "Defendant"), alleges upon information and belief as follows:

### JURISDICTION

1.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1338 because questions of federal law have been presented under 18 U.S.C. §1961, *et seq*.

2.      This Court also has supplemental jurisdiction over DiscoverIT's state law claims pursuant to 28 U.S.C. §1367.

3.      This Court has personal jurisdiction over Defendant pursuant to Va. Code §8.01-328.1 because Defendant: (i) maintains a major place of operations and business in the Commonwealth of Virginia (the "Commonwealth"); (ii) regularly solicits, transacts, and engages in business within the Commonwealth; (iii) engages in a persistent course of conduct within the Commonwealth; (iv) derives substantial revenue from services rendered in the Commonwealth; and (v) the contract at issue was negotiated and entered

into by HP through its agents working in the Commonwealth and performed by agents working within the Commonwealth.

4.      Venue is appropriate in this Court over Defendant pursuant to 28 U.S.C. §1391 because Defendant regularly conducts business in this district and/or a substantial part of the claims arose in this district.

## THE PARTIES

5.      Plaintiff DiscoverIT is a California corporation having its principal place of business at 25422 Trabuco Road, Suite 105-277, Lake Forest, California 92630. Mr. Steve Church, a service-disabled veteran, founded DiscoverIT nine years ago.

6.      DiscoverIT has been verified by the United States Department of Veterans Affairs' ("VA") Center for Verification and Evaluation ("CVE") as a service-disabled veteran-owned small business ("SDVOSB"). It is also certified by the state of California as a Small Business and as a Disabled Veteran Business Enterprise. These certifications make DiscoverIT an attractive teaming partner to large businesses participating in federal government contracting programs, as it enables them to meet their subcontracting goals. They also receive technical evaluation credit for using small businesses (including SDVOSBs) in their proposals for federal government contracts.

7.      Defendant HP is a Delaware corporation with its principal place of business at 3000 Hanover Street, Palo Alto, California, 94304. It also maintains other operating locations and divisions throughout the country. One such division is Hewlett-Packard Enterprise Services, LLC, or "HPES," which maintains an operating location at 13600 Eds Drive, Herndon, Virginia 20170.[1] It was HPES personnel at the Herndon

---

[1] For purposes of this Complaint, "HP" and "HPES" are referred to interchangeably.

location that negotiated and entered into contractual documents relevant to this Complaint, including the Teaming Agreement and the Statement of Work.

## FACTS COMMON TO ALL CLAIMS

8.      In early 2010, Mr. Church of DiscoverIT was approached by HPES about serving as a teaming partner in an upcoming solicitation to be issued by the NASA Supplies Services Center ("NASA"). This was NASA Request for Proposal Number NNX10272008R(the "Solicitation"). The Solicitation sought a federal government contractor to provide desktop computers, laptops, mobile devices, printers, and other computing equipment as well as end-user services, such as a help desk and data backup, to NASA employees and contractors. HPES agents represented that this would be a tremendous opportunity for Mr. Church's small business, and he agreed to be a teaming partner.

9.      On or about March 15, 2010, DiscoverIT and HPES entered into a Teaming Agreement. (*See* **Exhibit "A,"** Teaming Agreement).[2] Under the terms of the Teaming Agreement, HPES agreed that it would respond to the Solicitation as a prime contractor and include DiscoverIT as a subcontractor. HPES agreed to "offer a subcontract, purchase order, or other agreement (collectively, the 'Subcontract') to [DiscoverIT] for the scope of work set forth in Attachment A" (*See* **Exhibit "A,"** Section 4.1). Under these terms, a purchase order qualifies as a "subcontract."

10.     Pursuant to its terms, the Teaming Agreement terminated as of the "execution of a Subcontract as contemplated in this [Teaming] Agreement." (Section 5.1(8)). Under Section Twenty-Three (23), if the Teaming Agreement terminated

---

[2] The Teaming Agreement contains a confidentiality clause at Section Seven, with incorporates Attachment C (Non-Dislosure Agreement). Per the Teaming Agreement, however, as it terminated upon a subcontract's issuance, Section Seven has terminated.

pursuant to Section 5.1(8), the terms and conditions of the Subcontract then "govern[ed] and control[led]."

11. The Teaming Agreement in Section Three described how DiscoverIT was to interface with another subcontractor, KST Data, Inc. ("KST"), in performing work under any issued subcontract. DiscoverIT was anticipated to serve in a "support role" in a number of functional areas under the prime contract, including: assisting in the procurement process and providing HP with hardware/software; providing support under the direction of KST for hardware/software logistics services on Network Peripheral Seats; and providing Support Print Services.

12. On December 27, 2010, HP notified Mr. Church of DiscoverIT that HP had been announced as the successful offeror. Lockheed Martin Corporation protested the award, but the protest was lifted in April of 2011.

13. On or about April 2011, NASA issued a prime contract to HP, which was contract number NNX11AA01C (the "Contract")(also referred to as the Agency Consolidated End-User Services Contract, or the "ACES Contract"). The ACES Contract is a firm fixed price, indefinite-delivery/indefinite-quantity contract with a maximum value of $2.5 billion. The 4-year contract runs from November 2011 through October 2015, after which NASA may extend the contract under two, 3-year options

14. In April of 2011, Mr. Church received an email from Ms. Debra Gardiner of HPES, inviting him to participate in the first conference call with HPES and NASA. Mr. Church subsequently participated in the conference call.

15. On or about May 2, 2011, HPES and DiscoverIT entered into a Statement of Work ("SOW"). Under the terms of the SOW, DiscoverIT was to provide services to

4

HP in support of the ACES Contract "based on the pre-agreed negotiated fixed product pricing exhibit, to HP for four years, with the option of two 3-year renewal options."[3]

16.     In the SOW, Mr. Church assigned as the Supplier Project Manger, who is the designated individual to "interface to the HPES Project Manager and is responsible for the day-to-day management, conduct and performance of Supplier employees and any HPES authorized subcontracts used by [DiscoverIT] to deliver Services and/or Deliverables under this SOW." (SOW, Section 2.1). The SOW makes no mention of KST or its role with interfacing between DiscoverIT and HPES.

17.     At no time relevant to this Complaint did DiscoverIT enter into an agreement or contract with any party other than HPES.

18.     During the time period of April through May 2011, Mr. Church engaged in numerous communications with HPES and its agents, in which they discussed preparing to commence performance under the ACES Contract and Subcontract.

19.     To prepare for its performance under the SOW, DiscoverIT entered into a commercial lease agreement for office space with an effective date of July 1, 2011. Mr. Church leased this office space, which consisted of two small offices, because he reasonably believed it would serve as a central location for DiscoverIT's and HPES' staff and agents to work, meet, and collaborate. DiscoverIT held this lease for sixteen months and paid a total of $16,683.28 (sixteen thousand six hundred eighty-three dollars and twenty-eight cents).

---

[3] The legend appearing along the bottom of the SOW notes that it is subject to a Non-Disclosure Agreement (NDA) executed between the Parties on December 27, 2011; however the SOW pre-dates December 27, 2011. Further, the only NDA signed by Mr. Church was the NDA attached to the Teaming Agreement (Exhibit "A"), which was executed on March 9, 2010 and was terminated as of the execution of the Purchase Orders. In the interests of protecting potentially sensitive information, however, the SOW is cited in relevant part rather than reproduced in whole.

20.     Also in preparation of performance under the SOW, DiscoverIT obtained additional staffing for a period of three months, from July 1, 2011 through September 30, 2011. The individual hired served as the Executive Vice-President of Sales and Operations and was paid a total salary of $7,500.00 (seven thousand five hundred dollars). Mr. Church filled this position because he reasonably believed additional staffing was necessary to fill the gap that would be created by the time he would spend in his role of Supplier Product Manager, as was enumerated in the SOW.

21.     On or about October 28, 2011, Mr. Church received an email from Ms. Purvi Shah of HPES, containing two Purchase Orders (POs) for work under the ACES contract for the Base Period (*See* **Exhibits "B"** and **"C;"** PO 8900000225 and 8900000226, respectively)(collectively, the "Subcontract"). The order total for PO 8900000225 was $1,641,334.20 and the order total for PO8900000226 was $1,128,389.28.

22.     The execution of the POs on October 28, 2011 terminated the Teaming Agreement between DiscoverIT and HPES, as under its terms it terminated upon the "execution of a Subcontract." (*See* **Exhibit "A,"** Section 5.1(8)).

23.     Mr. Church received direction from Ms. Debbie Fischer of HPES via a phone call on or about October 28, 2011 to coordinate with KST in performing work under the POs. Mr. Church promptly contacted Mr. Jeff Bertoli of KST on that same day and, upon request, forwarded KST the POs issued by HPES.

24.     In late December of 2011, Mr. Church had not received an update from KST relating to the status of the POs. Accordingly, Mr. Church approached HPES for an update. No update was provided; and Mr. Church shortly thereafter received a telephone

6

call from Mr. Bertoli of KST. Mr. Bertoli admonished Mr. Church for contacting HPES directly and instructed him to only interface with KST as it related to the POs.

25.     This instruction was in direct contravention of the SOW between HPES and DiscoverIT, which stated that DiscoverIT was to assign a Supplier Project Manager to interface with the HPES Project Manager and listed Mr. Church as that Supplier Project Manager. (SOW, Section 2.1).

26.     Furthermore, while Attachment "A" to the Teaming Agreement between HPES and DiscoverIT contemplated that KST would interface with DiscoverIT, this Teaming Agreement terminated upon the issuance of the POs. Neither the POs nor the SOW addressed KST's role.

27.     DiscoverIT subsequently did not receive any work or orders under the POs. As the prime contractor on the ACES Contract tasked with invoicing under the Contract, HPES had actual knowledge of this.

28.     In early October of 2012, Mr. Church received a call from Mr. Steve Vetter, Senior Sales Executive of HPES, relating to another teaming opportunity on a federal government contract.[4] During this conversation, Mr. Church reminded Mr. Vetter that DiscoverIT had received no work under the POs, and Mr. Vetter represented that he would resolve the issue.

29.     By mid October of 2012, after unsuccessfully attempting to contact Mr. Vetter via telephone and email, Mr. Church contacted Ms. Deborah Gardiner relating to the status of the POs. Like Mr. Vetter, Ms. Gardiner stated that she would work to resolve

---

[4] Per Mr. Vetter's request, Mr. Church signed a teaming agreement on behalf of DiscoverIT for purposes of this other opportunity. Mr. Church believes that HPES was the successful offeror, but this is difficult to verify because HPES inadvertently included the RFP Number for the Aces Contract in this other teaming agreement and also because Mr. Vetter would not return Mr. Church's calls or emails on this subject.

the issue. Over the course of the next few weeks, Ms. Gardiner corresponded with several individuals within HPES via email relating to the issue of DiscoverIT receiving no work under the ACES Contract.

30.    The correspondence spanning over these few weeks demonstrates that DiscoverIT's contractual relationship was with HPES only and that KST acted as HPES' agent during all relevant times. For example, in an email exchange between Mr. Church and Ms. Gardiner on October 24, 2012, Ms. Gardiner stated: "Feel free to refer him (Mr. Bertoli) to me for anything. Again, our partnership is direct with you, supported by the POs, invoicing, and our SOW. KST does 'assign' the actual work to fulfill the POs, but is responsible for following our agreement."

31.    On November 14, 2012, two "refreshed" POs were issued by HPES to DiscoverIT for Option Year One, with the same PO numbers as those issued on October 28, 2011. These were for the same products and again valued at $1,641,334.20 and $1,128,389.28. (*See* **Exhibits "D" and "E"**).[5]

32.    Despite numerous inquiries made to HPES by Mr. Church, both via email and telephone, no orders were made by HPES from these POs.

33.    On April 25, 2013, Mr. Church submitted a Freedom of Information Act ("FOIA") request to NASA This request asked for HPES' subcontracting plan (the "Plan") under the ACES Contract. On June 17, 2013, NASA complied with the request, redacting specific sections of the Plan. (*See* **Exhibit "F,"** Subcontracting Plan).

34.    In the Plan, HPES stressed its "long tradition of commitment and demonstrated support to small businesses as [HPES] help[s] them grow and mature." (*See*

---

[5] These "refreshed" POs were issued in 2012, but the date listed on the front page of each PO is October 28, 2011.

**Exhibit "F,"** Section 9.1). It provided the estimated dollar value and percentage of total contract value "to SDVOSB concerns" as follows: $12,356,367 (Base Period, 4 years); $10,325,283 (1st Option, 3 years); and $10,781,181 (2nd Option, 3 years). In Table MS-9-1 of the Plan, HPES cited its SDVOSB subcontracting goals as 2.59% (two and fifty-nine one-hundredths percent) of the total contract value.[6]

36.     In Table MS-9-2 of the Plan, DiscoverIT was listed as a teaming partner, with focus areas of "staging, imaging, and product fulfillment support." It was described by HPES as "a long-time partner of KST Data providing support to their product catalog and fulfillment services, as well as managed print services. DiscoverIT will be focusing on ACES Product Catalog fulfillment, in particular Xerox and Apple products, as well as general support integrated into the KST Data Delivery fulfillment model."

36.     As explicitly enumerated by HPES in the Plan, it considered the Teaming Agreement with DiscoverIT to be an enforceable commitment. As set forth in Section 9.4.2 of the Plan ("Extent and Proof of Commitment"):

> "HPES has demonstrated its commitment to each of our teaming partners by executing ACES-specific Teaming Agreements with them that identify the functional work areas and in many cases specific work location, consistent with the specific opportunities described above. **These teaming agreements represent enforceable commitments mutually accepted by HPES and each teaming partner." (Exhibit "F")**(Emphasis Added).

37.     Mr. Church continued to follow up with HPES on numerous occasions relating to the status of the POs. Despite Mr. Church's numerous efforts and HPES' knowledge that no orders had been placed against the POs to its SDVOSB subcontractor, no orders were subsequently made.

---

[6] In responding to Mr. Church's FOIA request, NASA redacted HPES' subcontracting goals relating to other small business categories and listed businesses.

9

38.     At all times relevant to this Complaint, Mr. Church exerted good faith efforts to perform under both sets of the POs.

39.     On June 12, 2013, Mr. Church received an email from Frances Gilpin of HPES, which attached a closeout letter for both of DiscoverIT's POs. The email and closeout letter expressly acknowledged that "the POs issued to DiscoverIT...were issued in 2011 and no invoices have been submitted." (*See* **Exhibit "G,"** Email and Attached Closeout Letter). Mr. Church responded via email on June 24, 2013 and relayed that he did not concur with the closeout and that the POs referenced had been extended through December 31, 2013.

40.     In late 2013, HPES did not issue refreshed POs to DiscoverIT for Base Year Three. On December 4, 2013; January 15, 2014; and February 25, 2014; Mr. Church followed up via email with Mr. Doug Harris of HPES relating to the status of new POs. Neither Mr. Harris nor other employees of HPES responded to Mr. Church.

41.     On January 30, 2014, the NASA Office of Inspector General issued a review of HPES' ACES Contract, which is posted on its website at: http://www.oig.nasa.gov. (*See* **Exhibit "H,"** Inspector General Report). This report specifically states that agency goals are not being met under the Contract, noting that HPES' performance is measured using four retainage pools and their associated service level agreements. One of these retainage pools is the small business utilization pool, which is comprised of one percent of the contractor's net monthly invoice and is evaluated against HPES' originally-proposed subcontracting plan goals. To identify its performance against the established metrics, HPES is required to submit monthly reports to NASA. (*See* **Exhibit "H,"** pages 10-11).

42.     On January 20, 2014, Mr. Church submitted another FOIA request to the NASA Shared Services Center. One request was for the following documentation:

"Any invoice or written financial statement from Hewlett-Packard Enterprise Services (HPES) issued to the NAS Supply Center and requesting reimbursement for services/products rendered by DiscoverIT Solutions, Inc. ("DiscoverIT") under contract number NNX11AA01C (the "Contract")(also referred to as the Agency Consolidated End-User Services Contract, or the "ACES Contract").

43.     On March 5, 2014, NASA responded to this request by stating that it "found no responsive records" (*See* **Exhibit "I,"** March FOIA Response). However, because DiscoverIT had been instructed to invoice KST rather than HPES directly, these records as requested likely would not exist in the form(s) covered by this request.

44.     In this same January 20, 2014 request, Mr. Church also asked for the following documentation:

"Any annual, quarterly, or monthly summary or detailed level reports submitted by HPES to the NASA Supply Center under contract number NNX11AA01C which mention to the *use* of DiscoverIT as a subcontractor and/or *monies paid by HPES to DiscoverIT*" (Emphasis Added).

45.     In its response to this request, NASA included redacted reports while noting in its written response that some information was withheld or redacted because it contained trade secret and commercial or financial information.

46.     One redacted report provided by NASA included a summary from the time period of April 1, 2011 through September 30, 2013 (*See* **Exhibit "J,"** 9/30/2013 Redacted Report). The other report included a summary from the time period of April 1, 2011 through October 31, 2013 (*See* **Exhibit "K,"** 10/31/2013 Redacted Report).

47.     In both reports, DiscoverIT is listed, along with its socioeconomic status as a "SB" (small business), "VOSB" (veteran-owned small business) and "SDVOSB" (service-disabled veteran-owned small business). The "total" listed at the bottom of each

report is $2,769,723.48 (two million seven hundred sixty-nine thousand seven hundred twenty-three dollars and forty-eight cents). This is the total amount of the two POs issued by HPES to DiscoverIT in November of 2011, and again in November of 2012.

48.     Because DiscoverIT had requested reports "submitted by HPES" which mentioned the "**use**" of DiscoverIT as a subcontractor and/or **monies paid to it**" (emphasis added), this report reflects that HP has represented to the NASA Supply Center on at least two occasions that it has used DiscoverIT as a subcontractor and/or paid it $2,2769,723.48. In fact, HPES never actually "used" DiscoverIT or paid it any monies.

49.     Because HPES had issued a closeout letter to Mr. Church on June 12, 2013, this reflects that as it relates to the time periods covered by these reports, HPES had actual knowledge that it had not in fact used DiscoverIT or paid it $2,769,723.48.

50.     The small business utilization pool is one of the retainage pools used by the NASA Supply Center to gauge HPES' performance. Based on this report, HPES received credit for paying DiscoverIT $2,769,723.48, when it in fact paid DiscoverIT $0.00 (zero dollars).

51.     In addition to the reports disclosed by NASA in response to DiscoverIT's FOIA requests, upon knowledge, information, and belief, DiscoverIT in good faith believes that HPES has represented to NASA on other occasions, via regular and/or electronic mail, that it has utilized DiscoverIT and/or paid it monies under the ACES Contract, when it in fact has not done so.

52.     In general, while DiscoverIT cites to two instances of HPES representing to NASA that it used or paid DiscoverIT during the time periods of April 1, 2011 through September 30, 2013 and April 1, 2011 through October 31, 2013, DiscoverIT does not

12

have immediate access to evidence of other acts because this information would have been exchanged between HPES and NASA. These additional acts are properly developed through discovery.

53.     As of the date of this Complaint, DiscoverIT has received no monies for work with HPES under the ACES Contract.

54.     Because of HPES' conduct, DiscoverIT has also been denied the opportunity to use its work under the Aces Contract as past performance information that can be used in securing future government contract work.

55.     DiscoverIT's counsel sent HPES a demand letter on March 4, 2014 relating to its concerns with HPES' breach of contract relating to the POs. Mr. Charles Bartlett, a Business Relations Manager, responded via email on March 24, 2014 and denied DiscoverIT's allegations. Mr. Bartlett is not an attorney.

## COUNT I

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §§ 1961, *ET SEQ.*

56.     DiscoverIT repeats, reiterates, and re-alleges each and every allegation as contained in the previous paragraphs with the same force and effect as if more fully set forth herein at length.

57.     Defendant is a "person" as defined by 18 U.S.C. §§ 1961(3) and 1964(c).

58.     Defendant is a corporation organized for profit and constitutes an "enterprise" under 18 U.S.C. §§ 1961(4) and 1962(c).

59.     Defendant was and is engaged in activities that affected and continue to affect interstate commerce.

60.     The Defendant violated 18 U.S.C. § 1341 (Frauds and Swindles) by: (1) knowingly participating in a scheme to defraud; and (2) using the mails or interstate wire facilities in furtherance of this scheme by sending fraudulent invoices and/or reports via electronic mail to NASA representing that work had been completed by DiscoverIT under the Aces Contract when it had actual knowledge that no such work had been performed, and by receiving electronic payment via wire for such work.

61.     The Defendant violated 18 U.S.C. § 1341 (Frauds and Swindles) by: (1) knowingly participating in a scheme to defraud; and (2) using the mails or interstate wire facilities in furtherance of this scheme by sending fraudulent invoices and/or reports via electronic mail to NASA representing that work had been completed by DiscoverIT under the Aces Contract when it had actual knowledge that no such work had been performed, and by receiving credit under its Subcontracting Plan and the small business utilization pool, which is one of the retainage pools used by NASA to gauge HPES' performance.

62.     The Defendant violated 18 USC § 1343 (Fraud by Wire, Radio or Television) by: (1) knowingly participating in a scheme to defraud; and (2) using wire, radio, or television communication in interstate commerce to transmit writings in furtherance of this scheme by using email communications to continuously and knowingly represent to DiscoverIT its intention to issue orders off the POs when it in fact had no intention of doing so.

63.     HPES engaged in a pattern of racketeering activity by engaging in two or more acts during the performance of DiscoverIT's Subcontract under HPES' Aces Contract, during the approximate period of March 2010 through the date of the latest

report issued to NASA reflecting work performed by DiscoverIT (no earlier than October 31, 2013). Other specific acts of racketeering activity will be developed through discovery.

64.     As a direct and proximate cause of Defendant's conduct and violations of 18 U.S.C. §§ 1341 and 1343, DiscoverIT's suffered substantial injury to its business and property, to include: lost profits, other monetary damages, and the inability to use its performance on the Aces Contract as past performance credit in pursuing future work in the federal government contracts arena.

## COUNT II

### BREACH OF CONTRACT

65.     DiscoverIT repeats, reiterates, and re-alleges each and every allegation as contained in the previous paragraphs with the same force and effect as if more fully set forth herein at length.

66.     The Parties entered into the Teaming Agreement on March 15, 2010. On October 28th, 2011, this Teaming Agreement was terminated upon the execution of a "Subcontract" per its terms, which was the first set of POs for the Ace Contract's Base Period.

67.     As reflected by the language of the relevant contractual documents, the Parties' conduct, and HPES' enumerated representations made in Section 9.4.2 of its Subcontracting Plan, these POs were enforceable commitments.

68.     At all times, DiscoverIT exercised good faith in fulfilling its performance requirements under the POs.

15

69.     HPES breached this Subcontract with DiscoverIT by making no good faith attempt to order from the POs and by not placing orders against these POs as it had committed to do so.

70.     As a direct and proximate result of Defendants' actions, DiscoverIT has suffered damages.

## COUNT III

### BREACH OF CONTRACT

71.     DiscoverIT repeats, reiterates, and re-alleges each and every allegation as contained in the previous paragraphs with the same force and effect as if more fully set forth herein at length.

72.     On November 12, 2012, HPES issued a second set of POs to DiscoverIT for the Ace Contract's Base Year Two, which qualified as a "Subcontract" for purposes of the Parties' Teaming Agreement.

73.     As reflected by the language of the relevant contractual documents, the Parties' conduct, and HPES' enumerated representations made in Section 9.4.2 of its Subcontracting Plan, these POs were enforceable commitments.

74.     At all times, DiscoverIT exercised good faith in fulfilling its performance requirements under the POs.

75.     HPES breached this Subcontract with DiscoverIT by making no good faith attempt to order from the POs and by not placing orders against these POs as it had committed to do so.

76.     As a direct and proximate result of Defendants' actions, DiscoverIT has suffered damages.

16

## COUNT IV

### BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

77.     DiscoverIT repeats, reiterates, and re-alleges each and every allegation as contained in the previous paragraphs with the same force and effect as if more fully set forth herein at length.

78.     HPES had an implied duty of good faith and fair dealing in fulfilling its duties under the Teaming Agreement and Subcontract (the POs) with DiscoverIT.

79.     HPES breached its implied duty of good faith and fair dealing in fulfilling its contractual duties in numerous ways, to include: entering into the Teaming Agreement and Subcontract (the POs) with no intent to honor their provisions; making no effort to honor the provisions of its Subcontract with DiscoverIT; misleading DiscoverIT relating to its intent to utilize DiscoverIT under the ACES Contract; and inducing DiscoverIT to rely on its representations that work was forthcoming when HPES knew it was not.

80.     As a direct and proximate result of Defendants' actions, DiscoverIT has suffered damages.

## COUNT V

### UNJUST ENRICHMENT/QUASI-CONTRACT

81.     DiscoverIT repeats, reiterates, and re-alleges each and every allegation as contained in the previous paragraphs with the same force and effect as if more fully set forth herein at length.

82.     DiscoverIT conferred a benefit on HPES; specifically the assistance with its technical proposal submitted in response to NASA RFP NNX10272008R, including

and especially its evaluation credit received for utilizing an SDVOSB. This contributed to HPES' selection by NASA as the awardee of the Aces Contract.

83.      Upon the award of the Aces Contract to HPES, HPES continued to reap the benefit of including DiscoverIT on its small business and subcontracting reports submitted to NASA, and by holding out DiscoverIT as an example of one of the small businesses benefited by NASA awarding HPES the Aces Contract.

84.      HPES was aware of the benefit and services provided by DiscoverIT and accepted them.

85.      Defendant has retained these benefits provided by DiscoverIT without reimbursing or benefiting DiscoverIT in return.

86.      Defendant's retention of the benefit provided by DiscoverIT without reimbursement is inequitable.

87.      As a direct and proximate result of Defendant's actions, DiscoverIT has suffered damages.

**WHEREFORE,** Plaintiff demands a trial by jury and the following:

a.      An award of treble monetary damages in the amount of $2,565,300.99 (two million five hundred sixty-five thousand three hundred dollars and ninety-nine cents) under Count I of the Complaint;

b.      An award of monetary damages in the amount of $855,100.30 (eight hundred fifty-five thousand one hundred dollars and thirty cents) under Counts II, III, IV and V of the Complaint;

c.      An award of prejudgment interest according to law;

d.      An award of Plaintiff's attorneys' fees in this action;

18

e.     An award of Plaintiff's costs and expenses in this action; and

f.     An award or any other relief that this Court may deem just and proper.

Dated: Roswell, GA
       March 27, 2014

                              Respectfully submitted,


                              Sarah Schauerte
                              VA Bar No. 79023
                              Legal Meets Practical, LLC
                              *Attorney for Plaintiff*
                              300 Colonial Center Parkway, Suite 100
                              Roswell, GA 30076
                              Telephone: (703) 552-3220
                              Facsimile: (703) 552-3220
                              scs@legalmeetspractical.com